S. A. HAYNES *v.* JOHN E. KIMPTON, S. D. HOBSON, AND C. W. PIERCE.

*Mechanics' Lein.*

It is not competent for the county court to order a case wherein judgment has been rendered, brought forward on the docket, and hear evidence and adjudicate a fact, and engraft into the record material statements, for the mere purpose of reviving a mechanics' lien that has lapsed and become extinct as against purchasers and owners of the estate who acquired title after such lien had lapsed and terminated.

THIS was a motion to bring forward a case in favor of the plaintiff against the defendant Kimpton, wherein judgment was rendered for the plaintiff at the September term, 1871, and to have the entry of judgment stricken off, and judgment entered up for the plaintiff, embracing a brief statement of the contract upon which the same was founded, that the plaintiff might preserve his statutory lien on a saw-mill and lot attached on the original writ in said cause.

On the 24th of February, 1871, the plaintiff filed a mechanics' lien on said property.

The original writ in said cause was dated February 28, 1871, and returnable to the then next term of Essex county court ; and at the next September term thereof, judgment was rendered thereon in favor of the plaintiff, and recorded in the town clerk's office of Morgan, the town in which said property was situate, January 13, 1872. Kimpton purchased the land attached of one Cargill, February 16, 1870, and mortgaged the same to said Cargill to secure the purchase money, and there was due on that mortgage at the time of this proceeding, some over $1000. Kimpton built a saw-mill, blacksmith shop, and two or three houses on the lot ; and also a small house on the lot adjoining. On the 9th of August, 1870, he deeded the land attached to George N. Dale by warranty deed ; but it was understood that Dale should re-deed on demand and payment of what might be due him.

On the 21st of August, 1871, Kimpton deeded his interest to Hobson, and on the 13th of June, 1872, Hobson deeded the same to Pierce by quit-claim deed, Pierce paying about $12,000

therefor in money, and assuming certain encumbrances thereon, not including the plaintiff's. Dale deeded to Pierce, January 3d, 1873, and at the same time took a mortgage for the amount due him, about $2500. On the 3d of January, 1873, Winslow & Coombs took a mortgage from Pierce, on which there is due about $11,000; also another on the 29th of November, 1873, on which there is due about $6,000.

When Hobson received the conveyance from Kimpton, and when he conveyed to Pierce, they both understood that some proceedings had been had to secure about $400 in favor of the plaintiff, and that the plaintiff claimed a lien on the property, but they did not understand that he had a valid lien thereon, but supposed that whatever he had was not valid. They made no inquiries of the plaintiff in regard to the same. When Winslow & Coombs took their mortgages, it did not appear whether or not they had knowledge of the plaintiff's lien.

The iron work charged for by the plaintiff, was used principally about building the mill on the premises attached. The chains and sleds were used in drawing materials to build the mill, the blacksmith shop, and the houses, and to draw logs into the mill; and the horses and oxen, the shoeing of which was charged, were used for the same purpose The contract under which the work was done, was made about the 10th of April, 1870. Kimpton asked the plaintiff if he would do the iron work for his mill, and said he would furnish him funds fast enough to pay for all the stock, and pay the balance when the work was completed, and wished the plaintiff to work according to the order of Jones, the mill-wright who had charge of building the mill. The plaintiff agreed to do so, and the goods were delivered on the orders of both Jones and Kimpton.

The defendants objected to the motion being granted,—

1. Because the charges were not of the nature of those contemplated by the statute.

.2. Because the work was not done under a contract provided for by the statute.

3. Because when Hobson purchased, he acquired a right which the motion could not disturb.

4. Because when Pierce purchased, the plaintiff's claim was upon the town records, and Pierce had a right to regard that as the only claim he had, and the records showed that the plaintiff had no lien.

5. Because Winslow & Coombs took their mortgage for what the property was worth, with no knowledge of any lien or claim by the plaintiff.

The court, at the March term, 1874, Ross, J. presiding, over-ruled the objections, and ordered the original suit brought forward and the entry of judgment therein stricken off, and rendered judgment for plaintiff for the amount agreed upon, embracing a statement of the contract set forth in plaintiff's lien, with an order in regard to the costs.

The court found that Hobson and Pierce at the time of taking their respective conveyances, had sufficient knowledge in relation to the plaintiff's claim and proceedings, to put them on inquiry in regard thereto, and that therefore they stood no better than Kimpton. The court did not attempt to decide or settle the order in which the various mortgages and the plaintiff's lien, when perfected, should be paid out of the property, but left that to be determined in some proper proceeding for that purpose. Exceptions by the defendants.

*George N. Dale*, for the defendants.

If it is claimed that this is not a proper time or place to urge our objections to the plaintiff's lien, we reply that we claim the right to meet the motion here, and resist it now. The benefit to the plaintiff of the orders granted by the court below, depends entirely upon how those objections are disposed of, and they are disposed of by rules of law, and not by discretionary powers; and rights have been acquired in the property, knowing that no lien existed, and there is no power in a court to make a record which would disturb those rights; for if the court has power to bring this lien to life, its age must be computed from its birth, and if this order is creative, the lien and order are contemporary, and if the lien is to take effect only from the order, then an attachment of the property would accomplish all the law ought to do for the

plaintiff. Proceedings like those to create a lien, are entirely dependant upon the statute for support, and no omission of any statute requirement can be supplied or excused by an order of court, especially if such lien is sought for the purpose of disturbing intervening rights.

But it is said that this is a mere motion to bring the case forward, and that afterwards these objections can be urged. But we deny the right to have such order made, because we have the right to show here that such order is ineffectual to accomplish anything for the plaintiff. We are not to be compelled to risk its effect as an estoppel, nor ought we, as subsequent purchasers or as mortgagees, to be subjected to the expense of marshalling the claims to this property. But the plaintiff is designing more than this, for if he did not seek priority over these mortgages and claims, his motion would be ineffectual. It would be unjust to revive this lien and give it priority over a mortgage taken subsequent to the commencement of the lien proceedings; and yet, while it is a creature of the statute which prescribes its effects as well as its requisites, how can the court restrict or control its effects? It is either a lien from its beginning, in virtue of the statute, or it is lost; and, of course, as against subsequent conveyances without notice, it can have no effect.

We submit that as matter of law the court below has no authority to make the order, and that it is subject to revision by this court; for if it shall be decided here that the plaintiff has no lien on the property, there would be no foundation or cause for the motion. And whether there is a lien or not, is a question of law for this court; therefore, this court is to determine on what foundation the order is made, for on that the correctness of the order depends. If to revive a lien the very existence of which is disputed, is mere discretion, this court could not revive an order creating a lien where none existed.

A mechanics' lien is created by statute, only in cases in which some agreement has been made to furnish materials for erecting or repairing some building, and does not apply to this case, in which the work was furnished indiscriminately for various build-

7

ings as well as for other purposes. These services are not immediately connected with the erection of the mill. Phillips Mech. Liens; *Johnson* v. *Pike*, 35 Me. 291; *Lombard* v. *Pike*, 33 Me. 141; *Spafford* v. *True*, 33 Me. 281; *Bicknell* v. *Trickey*, 34 Me. 273; *McCullis* v. *Wilson*, 24 Me. 286; *Pearsons* v. *Tinker*, 34 Me. 384; *Robinson* v. *Runker*, 38 Me. 130; *Perkins* v. *Pike*, 42 Me. 141.

The remaining three objections to the motion are based upon the well-established doctrine, that the purchaser of real property takes his notice from the public records as to the title; and when Pierce purchased, he relied upon the records as they were, showing the premises clear from this encumbrance, and now the plaintiff seeks to reform or rather raise a dead proceeding based upon a statute which is in derogation of the common law, in order to disturb vested rights.

*Henry Heywood*, for the plaintiff.

The authorities are very numerous that sustain our motion as against Kimpton, to have the former judgment stricken off, the action brought forward, and a new judgment rendered, setting out the lien, so that it shall be preserved upon the property. *Frank* v. *Frank*, 43 N. H. 508; *Porter* v. *Vaughan et al.* 22 Vt. 269; *Mosseux* v. *Brigham*, 19 Vt. 460; *Tudor et al.* v. *Taylor*, 26 Vt. 444–449; *Hazen* v. *Snow*, 14 Pick. 28; *Johnson* v. *Day*, 17 Pick. 106.

If the plaintiff is entitled to have the judgment amended as against the defendant Kimpton, he is against Hobson and Pierce, as they both took their title by quit claim deed, with full knowledge of the plaintiff's claim. As the case stands, the question is, whether the plaintiff has a lien that he is entitled to enforce against Kimpton, on property that belonged to Kimpton. The questions of the priority of the mortgage incumbrances, or what may be due thereon, and to whom, are not raised by this proceeding.

It is not necessary that the labor or materials should go directly into the construction of the building, to give a lien under the statute. But if the court think otherwise, and that the plaintiff has no lien for shoeing oxen used on the work, and other like

charges that only went indirectly into the construction of the work, then we claim that the payments upon this account should be applied upon that part of the account for which the plaintiff has no security. *Briggs* v. *Williams et als.* 2 Vt. 283.

We claim that there was such a contract or agreement as brings this case within the statute. *Kenney* v. *Gage*, 33 Vt. 302; *Parks* v. *Bill*, 7 Gray 429; *Dewing* v. *Cong. Soc. of Wilbraham*, 13 Gray 144; *Whitford* v. *Newell*, 2 Allen, 424; *Morse* v. *School Dist.* 3 Allen 307.

The opinion of the court was delivered by

REDFIELD, J. The mechanics' lien which the plaintiff seeks in this proceeding to enforce, is a matter altogether of statutory regulation. The party must first cause to be recorded in the town clerk's office, " a written memorandum, by him signed, asserting such claim." 2d. Commence his action on such contract, for which a lien is claimed, and " cause said house or other building to be attached thereon. 3d. If he obtains judgment, the record thereof shall embrace a brief statement of the contract on which the same is founded." 4th. " Within five months after the date of such judgment, cause a certified copy of such judgment to be recorded in the town clerk's office," &c. These being done, the house or other building shall be holden for such judgment, in the same manner as if the same had been mortgaged.

The memorandum asserting the plaintiff's claim of a lien on the building was duly recorded. But the record of the judgment gives no intimation that the recovery was had on a contract to furnish materials for building the mill; or that it had any reference to or connexion with the memorandum recorded in the town clerk's office. The incipient lien therefore became extinct by the failure to comply with the statute requirements.

There is no claim that the judgment is erroneous, or incomplete as a judgment; but that there was omitted the proof and record of a necessary fact in order to preserve the lien.

Whether such lien could be revived after it had once lapsed, as against the judgment debtor, by bringing forward the case on the docket, and entering up a *new* judgment, we need not discuss, as

several intervening rights have attached. Kimpton deeded to Hobson on the 21st August, 1871; and Hobson deeded to Pierce 13th day June, 1872. And on the 3d January, 1873, Winslow & Coombs took a large mortgage on the premises. The court found that Hobson and Pierce, at the time they acquired title, had such knowledge of plaintiff's claims, as to be put on inquiry in relation thereto. But such inquiry would have informed them of the actual facts; the plaintiff had given notice of a lien, but had not preserved it. 33 Vt. 302. And as to Winslow & Coombs, there is no claim they had notice of any facts that should have put them on inquiry. The inquiry is, therefore, whether it be competent for the county court to order a case brought forward and hear evidence and adjudicate a fact and engraft into the record material statements, for the mere purpose of reviving a lien that had lapsed and become extinct, as against purchasers and owners of the estate who had acquired title after such lien had lapsed and terminated? We think not. There is no doubt that courts have control over their own records, and may bring forward a case, and cause the record to be perfected. But this *judgment* was regular and record perfect, so far as concerns the judgment. And this proceeding is had, avowedly, to *create* a lien which is lost. If the first attaching creditor of real estate, having neglected to levy his execution within the statute time, should ask to bring forward his case, for the purpose of restoring his lien by attachment which had become extinct, it would be a flagrant abuse of the power to correct a record. And although such action would not, in fact, revive such attachment to the prejudice of intervening incumbrances, still, we think, such proceedings for such purpose would be without warrant of law.

II. In the view we have taken of this case, we do not deem it necessary to carefully examine the affidavits attached, and determine whether any of the items in plaintiff's claim, and if so, how many, are such that the statute lien could not attach; and whether a judgment including such items would operate in whole or in part, or not at all, as a lien upon the premises.

Judgment reversed, and motion dismissed with cost.